UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
EVAN S. FILION AND
SHELLYE R. BLAKE,
       DEBTORS.

Chapter 13
Case No. 06-11804-WCH

MEMORANDUM OF DECISION

I. **INTRODUCTION**

The matter before the Court is the "Motion for Entry of Discharge" filed by the debtors Evan S. Filion and Shellye R. Blake (the "Debtors") and the "Trustee's Limited Objection to Motion for Entry of Discharge" (the "Objection") filed by Carolyn Bankowski, the standing Chapter 13 Trustee (the "Trustee"). Having completed approximately 58 months of a 60-month Chapter 13 plan, the Debtors, who are above-median income debtors, now move for entry of a discharge pursuant to 11 U.S.C. § 1328(a). The Trustee asserts that a discharge may not be granted prior to the expiration of the 60-month applicable commitment period prescribed by 11 U.S.C. § 1325(b). For the reasons set forth below, I will deny the Debtors' motion.

II. **BACKGROUND**

The Debtors filed a voluntary Chapter 13 petition on June 11, 2006. Their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C") lists monthly income of $5,078, or $60,936 per year.[1] Because this is above the Massachusetts median family income of $57,165 for a family of two, the Debtors are

---

[1] Form 22C, Docket No. 13.

1

above-median income debtors and, pursuant to 11 U.S.C. § 1325(b)(4), their "applicable commitment period" is five years.[2] On September 8, 2008, I issued an order confirming the Debtors' Chapter 13 Plan (the "Plan").[3] The Plan has a 60-month term effective July 1, 2006, and the total cost is $59,784.67.[4] As of the effective date, the Debtors had paid $20,396.75 to the Trustee, leaving $39,387.92 to be paid.[5] This amount was divided over the remaining 39 months of the plan, leaving a monthly payment of $1,009.00. Through the Plan, the Debtors propose a dividend of 16.35% on allowed general unsecured claims.

After confirmation and prior to the filing of the Motion for Entry of Discharge, the Debtors tendered payments to the Trustee equal to the entire dollar amount owed under the Plan. On March 3, 2011, the Debtors filed the Motion for Entry of Discharge. Later that day, the Trustee filed the Objection. I conducted a hearing on the matter on March 18, 2011. At its conclusion, I took the matter under advisement.

### III. POSITIONS OF THE PARTIES

#### The Debtors

The Debtors argue that, having paid the dollar amount owed under the plan, they have "completed plan payments" and are therefore entitled to a discharge pursuant to 11 U.S.C. §1328(a).[6] They further assert that the Trustee seeks to "modify the plan post-confirmation" and

---

[2] 11 U.S.C. § 1325(b)(4).

[3] Order Dated Sept. 9, 2008 Confirming Third Amended Chapter 13 Plan, Docket No. 176.

[4] Third Amended Chapter 13 Plan, Docket No. 156.

[5] *Id.*

[6] *Id.*

2

cite caselaw for the proposition that "[o]nce a debtor has completed all payments under the plan, the plan cannot be modified."[7]

### The Trustee

The Trustee concedes that the Debtors have paid the dollar amount owed under the plan, but objects to the Motion for Entry of Discharge on the grounds that the Plan "cannot be considered complete" until the applicable commitment period has expired at the end of the 60-month applicable commitment period prescribed by 11 U.S.C. § 1325(b).[8]

## IV. DISCUSSION

The parties disagree over whether the Debtors have completed payments under the plan. The Debtors argue that, having paid the dollar amount provided for in the Plan, they have completed plan payments and are now entitled to a discharge. The Trustee counters that the Plan cannot be considered complete until the end of the 60-month term.

Variations of the phrase "completion of payments" are found in 11 U.S.C. §§ 1328(a) and 1329(a) in reference to entry of discharge and plan modifications, respectively. Pursuant to 11 U.S.C. § 1328, a court shall grant a discharge of all debts provided for in the plan "as soon as practicable after completion by the debtor of all payments under the plan."[9] Under 11 U.S.C. § 1329(a), a Chapter 13 plan may be modified on motion of a debtor, trustee, or holder of an allowed unsecured claim "at any time after confirmation of the plan but before the completion of

---

[7] Response to the Trustee's Limited Objection, Docket No. 185.

[8] Trustee's Limited Objection, Docket No. 184. I note that the Trustee's objection cites the applicable commitment period as 36 months. This appears to be a scrivener's error as both the Debtors' Form B22C and Third Amended Plan cite a 60-month commitment period.

[9] 11 U.S.C. § 1328(a).

3

payments under such plan."[10] What constitutes "completion of payments" is not otherwise defined under the Code and courts disagree about its meaning. Some courts have held that a plan is "complete" when the debtor makes all the plan payments to the trustee, regardless of whether the term of the plan has expired.[11] Nonetheless, these courts adopted this interpretation before BAPCPA was enacted or otherwise relied on pre-BAPCPA law. More recently, the United States Appellate Panel for the Ninth Circuit held that "the statutory concept of 'completion' of payments includes completion of the requisite period of time" prescribed by 11 U.S.C. § 1325(b).[12] Section 1325(b) provides that where an interested party has objected to the confirmation of a debtor's Chapter 13 plan, the length of the plan is determined by the "applicable commitment period."[13] Similar to the "completion of payments" debate, courts have disagreed over whether 11 U.S.C. § 1325(b) imposes a durational requirement.

Prior to passage of the Bankruptcy Abuse Prevention Consumer Protection Act ("BAPCPA"),[14] 11 U.S.C. § 1325(b)(1) provided that if the Chapter 13 trustee or the holder of an allowed unsecured claim objected to confirmation, the plan could be confirmed only if it provided for either (1) full payment of all unsecured claims or (2) that "all of the debtor's projected disposable income to be received in the *three year period* beginning on the date that

---

[10] 11 U.S.C. § 1329(a).

[11] *See Meza v. Truman (In re Meza)*, 467 F.3d 874 (5th Cir. 2006); *In re Salva*, No. 03-09405, 2009 WL 2898822 (Bankr. D.P.R., Apr. 1, 2009); *In re Sounakhene*, 249 B.R. 801, 803 (Bankr. S.D. Cal. 2000); *Casper v. McCullough (In re Casper)*, 154 B.R. 243, 247 (N.D. Ill. 1993).

[12] *Fridley v. Forsythe (In re Fridley),* 380 B.R. 538, 546 (B.A.P. 9th Cir. 2007).

[13] 11 U.S.C. § 1325(b)(4).

[14] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109-8, 119 Sat. 23, 11 U.S.C. § 101 *et seq.*

4

the first payment is due under the plan will be applied to make payments under the plan."[15]

BAPCPA substituted the term "applicable commitment period" for "three year period."[16] Section 1325(b)(1) now provides that a Chapter 13 plan may be confirmed only if it provides for either (1) full payment of all unsecured claims or (2) "that all of the debtor's projected disposable income to be received in the *applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[17] The definition of "applicable commitment period" is found in 11. U.S.C. § 1325(b)(4):

> (4) For purposes of this subsection, the "applicable commitment period"—
>    (A) subject to subparagraph (B), shall be—
>       (i) 3 years; or
>       (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—
>          (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>          (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>          (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and
>    (B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.[18]

After BAPCPA was enacted, a significant split of authority developed over the meaning of "applicable commitment period" and the effect of 11 U.S.C. § 1325(b). Some courts have

---

[15] 11 U.S.C. § 1325(b)(1) (2000) (emphasis added).

[16] 11 U.S.C. § 1325(b)(1).

[17] *Id.* (emphasis added).

[18] 11 U.S.C. § 1325(b)(4).

adopted a "monetary" or "multiplier" view, holding that the applicable commitment period is merely a "multiplier" in the 11 U.S.C. § 1325(b)(1)(B) formula whereby the total amount owed under the plan equals projected disposable income multiplied by the number of months in the applicable commitment period.[19] Under this view, a court may confirm a plan that is shorter than the applicable commitment period so long as it provides for payment of the dollar amount determined by the 11 U.S.C. § 1325(b)(1)(B) calculation.  The overwhelming majority of courts, including the United States Courts of Appeal for the Sixth, Eighth, and Eleventh Circuits and the United States Bankruptcy Appellate Panel for the Ninth Circuit, have adopted a "temporal" view, holding that the statute imposes a durational requirement.[20] According to this interpretation,

> if the trustee or the holder of an allowed unsecured claim objects to confirmation of a Chapter 13 plan of a debtor with positive projected disposable income whose plan provides for a less than full recovery for unsecured claimants, the plan cannot be confirmed unless it provides that all of the debtor's projected disposable income to be received in the applicable commitment period will be applied to make payments over a duration equal to the applicable commitment period set forth in § 1325(b).[21]

For the reasons described herein, I join these courts in adopting the temporal view.

---

[19] *Dehart v. Lopatka (In re Lopatka),* 400 B.R. 433 (Bankr. M.D. Pa. 2009); *In re Burrell*, No. 08–71716, 2009 WL 1851104 (Bankr. C.D. Ill. June 29, 2009); *In re Mathis*, 367 B.R. 629 (Bankr. N.D. Ill. 2007); *In re Swan*, 368 B.R. 12 (Bankr. N.D. Cal. 2007); *In re Brady*, 361 B.R. 765 (Bankr. D.N.J. 2007*); In re Lawson*, 361 B.R. 215, 220 (Bankr. D. Utah 2007); *In re Fuger*, 347 B.R. 94 (Bankr. D. Utah 2006); *In re Rush*, 387 B.R. 26 (Bankr. W.D. Mo. 2008); *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007).

[20] *Baud v. Carroll*, 634 F.3d 327, 338 (6th Cir. 2011); *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873 (11th Cir. 2010); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008); *Timothy v. Anderson (In re Timothy),* 442 B.R. 28 (B.A.P. 10th Cir. 2010); *In re Fridley,* 380 B.R. at 538; *In re King*, No. 10-18139, 2010 WL 4363173 (Bankr. D. Colo. Oct. 27, 2010); *Baxter v. Turner (In re Turner)*, 425 B.R. 918, 920-21 (Bankr. S.D. Ga. 2010); *In re Moose*, 419 B.R. 632, 635-36 (Bankr. E.D. Va. 2009); *In re Meadows*, 410 B.R. 242, 245-47 (Bankr. N.D. Tex. 2009); *In re Brown*, 396 B.R. 551, 554-55 (Bankr. D. Colo. 2008); *In re Nance*, 371 B.R. 358 (Bankr. S.D. Ill. 2007).

[21] *Baud,* 634 F.3d at 338.

As numerous courts before me have found, the plain language of 11 U.S.C. § 1325(b) supports a finding that "applicable commitment period" is a temporal term.[22] As explained by the United States Court of Appeals for the Eleventh Circuit:

> [W]e first look at the term "applicable commitment period" and note that "applicable" and "commitment" are modifiers of the noun, the core substance of the term, "period." The plain meaning of "period" denotes a period of time or duration. "Applicable commitment period" at its simplest is a term that relates to a certain duration, and based on its presence in § 1325, it is a duration relevant to Chapter 13 bankruptcy. The modifier "commitment" then reveals that "applicable commitment period" is a duration to which the debtor is obligated to serve. Finally, the meaning of "applicable" reflects the fact that there are alternate "commitment periods" depending on the debtor's classification as an above-median income debtor or a below median income debtor.
>
> Section 1325(b)(4) clearly says that the "applicable commitment period" shall be five years for an above-median income debtor. . . . "The word 'shall' is ordinarily the language of command." The use of the word "shall" "normally creates an obligation impervious to judicial discretion." The plain reading of § 1325(b)(4) indicates that an above-median income debtor . . . is obligated to form a bankruptcy plan with an "applicable commitment period" of no less than five years, unless his unsecured debts are paid in full.[23]

The temporal view is also supported by the Supreme Court of the United States' decision in *Hamilton v. Lanning*.[24] In *Lanning*, the Court rejected a "mechanical" approach to calculating the projected disposable income component of the 11 U.S.C. § 1325 calculation, instead adopting a "forward-looking" approach whereby the court may account for changes in the debtor's income or expenses that are "known or virtually certain" at the time of confirmation.[25] The Eleventh Circuit acknowledged this support, stating:

---

[22] *See e.g., Baud*, 634 F.3d at 338; *In re Tennyson*, 611 F.3d at 876-878; *In re Timothy,* 442 B.R. at 36-37; *In re Wing*, 435 B.R. 705, 709-710 (Bankr. D. Colo. 2010).

[23] *In re Tennyson*, 611 F.3d at 877 (citations omitted).

[24] *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010).

[25] *Id.* at 2472.

> *Lanning* opens the door for the possibility that the final projected disposable income accepted by the bankruptcy court may not be the result of a strict § 1325(b)(1)(B) calculation. The "applicable commitment period" must have an existence independent of the § 1325(b)(1)(B) calculation. If "applicable commitment period" were left dependent upon projected disposable income, . . . then it would necessarily be dependent on the multitude of indeterminate factors that *Lanning* has allowed to be used in the determination of projected disposable income. This in turn would leave "applicable commitment period" an indeterminate term. In order for "applicable commitment period" to have any definite meaning, its definition must be that of a temporal term derived from § 1325(b)(4) and independent of § 1325(b)(1).[26]

The United States Court of Appeals Sixth Circuit further noted that in *Lanning,* the Court relied on the "lack of explicit multiplier language in § 1325(b)(1)" to support adoption of the forward-looking approach and that a similar lack of multiplier language supports a temporal reading of 11 U.S.C. § 1325(b)(1).[27]

Returning to the case at bar, it is without question that while the Debtors have paid the full amount contemplated by their confirmed plan, they have not done so according to the Plan provisions which provide for a term of 60 months. Indeed, had the Debtors proposed a plan consistent with their performance, namely, a 58-month plan with a 16.35% dividend paid to general unsecured creditors, it would not have been confirmable over the objection of the Trustee. Essentially, the Debtors seek to sidestep 11 U.S.C. § 1325(b)(1) by moving for an early discharge. Considering this very issue, the United States Bankruptcy Appellate Panel for the Ninth Circuit held that a plan that could not be confirmed at the outset "cannot [later] be ratcheted into effectiveness without a formal plan modification."[28] The Panel reasoned that the interplay between 11 U.S.C. § 1328(a) and 1329(a) "invites a race whenever a debtor's income

---

[26] *In re Tennyson,* 611 F.3d at 878-879.

[27] *Baud*, 634 F.3d at 339.

[28] *In re Fridley*, 380 B.R. at 545.

increases during the performance of a plan" whereby the debtor tries to pay all amounts set forth under the plan before the trustee or other interested party moves for a modification to compel higher plan payments on account of the increased income.[29] "The debtor would get to run a shorter route if the prepayment amounted to a ticket to bypass the matrix of the noticed plan modification motion process through which all other competitors must run."[30] The Panel concluded that "[a] debtor desiring to prepay a Chapter 13 plan and obtain an early discharge without paying allowed unsecured claims in full must follow the § 1329 modification procedure prescribed by Rule 3015(g)."[31] While I need not determine whether such a modification would be confirmable, I find the Panel's logic sound.

BAPCPA enacted consumer bankruptcy reforms to "correct perceived abuses of the bankruptcy system" and ensure that debtors "repay creditors the maximum they can afford."[32] Plan modifications are one of the tools BAPCPA provided for ensuring maximum possible repayment to creditors. If a debtor experiences an increase in projected disposable income during the life of the plan, the trustee or holder of an allowed unsecured claim may move the court, pursuant to 11 U.S.C. § 1329(a), for a plan modification to compel higher plan payments.[33] This procedure gives creditors the opportunity to "capture material increases in net income that occur during the life of the plan," and it is "part of the statutory bargain inherent in chapter 13 . . . that the debtors must, for the prescribed life of the plan, run the gauntlet of exposure to trustee or

---

[29] *Id.* at 542.

[30] *Id.*

[31] *Id.* at 544.

[32] *Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716, 721 (2011).

[33] 11 U.S.C. § 1329.

9

creditor requests to increase payments."[34] The position promoted by the Debtors contradicts the goal of ensuring maximum repayment. If the Debtors' argument was accurate, an above-median debtor could use exempt assets to satisfy the monetary requirement of their plan and receive a grant of discharge immediately following confirmation of the plan, rendering 11 U.S.C. § 1325(b)(4)(A) and (B) meaningless and depriving creditors of the opportunity to receive the maximum possible repayment under the plan.[35] Therefore, in the absence of a formal plan modification, I find that the Debtors are not entitled to a discharge at this time.

## V. **CONCLUSION**

In light of the foregoing, I will enter an order denying the Motion for Entry of Discharge.

_____
William Hillman
United States Bankruptcy Judge

Dated: May 3, 2011

---

[34] *In re Fridley,* 380 B.R at 544.

[35] *Baud,* 634 F.3d at 343; *In re Tennyson*, 611 F.3d at 879, *In re Fridley*, 380 B.R. at 544.